## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
## No. 7:13-CV-138-BO

| | |
|---|---|
| ADAM D. MILLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JIMMY F. RICH, in his individual and | ) |
| official capacity, JESSE S. MCCUBBINS, | ) |
| in his individual and official capacity, and | ) |
| THE TOWN OF WRIGHTSVILLE | ) |
| BEACH, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This cause comes before the Court on plaintiff's motion for partial summary judgment and defendants' motion for summary judgment. A hearing was held on the pending motions before the undersigned on April 17, 2015, at Raleigh, North Carolina. Following the hearing, the Court stayed this matter awaiting the opinion from the Supreme Court in *Kingsley v. Hendrickson*, No. 14-6368. The *Kingsley* opinion has issued and the parties have had an opportunity to brief the effect of *Kingsley* on the instant matter. [DE 60 & 61]. The stay in this matter is hereby LIFTED and the Court considers the pending motions for summary judgment. For the reasons discussed below, plaintiff's motion is denied and defendants' motion for summary judgment is granted.

## BACKGROUND

The following factual background is composed the evidence in the record, including deposition testimony as well as the Court's viewing of the video from the police station booking or intake area. On Tuesday November 8, 2011, at about 1:16 a.m., plaintiff (Mills) was arrested

in Wrightsville Beach, North Carolina by defendant Rich (Rich) and another Wrightsville Beach police officer on suspicion of driving while intoxicated (DWI). [DE 38-13]. Mills was transported to the Wrightsville Beach police department and was verbally belligerent to Rich once they arrived at the police station. Rich Dep. 78. Mills initially refused to be photographed and Rich called Officer McCubbins (McCubbins) to assist. Rich Dep. 92. After Mills was photographed, he again verbally berated the officers but was not physically threatening; McCubbins left the booking room. McCubbins Dep. 161.

At approximately 1:37 a.m., Rich instructed Mills to sit on a metal bench and proceeded to fill out paperwork and attempt to retrieve information from Mills. During this time Mills continued to verbally berate Rich but was not physically threatening; Mills was handcuffed with his hands behind his back and his legs were not shackled. Mills Dep. 289. At approximately 1:40 a.m., Rich changed the position of Mills' handcuffs from his back to his front so that Mills could sign an implied consent form and use the telephone. Rich Dep. 89-90. Mills continued to verbally berate Rich and refused to comply with requests for information. Rich. Dep. 95.

At approximately 1:46 a.m., Rich directed Mills to stand up and appears to forcibly cause Mills to stand. Rich then placed Mills in a hold and both men can be seen moving off camera. Within seconds the two men return to the camera's view where Rich proceeded to press Mills against the wall above the metal bench with Mills' hands, still in handcuffs, over his head. Rich then retrieved Mills' driver's license from Mills' pocket. Rich Dep. 97. Rich contends that at this point Mills would not sit down when asked and started to resist when Rich attempted to assist him in sitting. *Id.*

McCubbins states that as he was leaving the police station he saw through the window what he believed to be an altercation or scuffle between Mills and Rich. McCubbins then called

2

Rich on his radio to attempt to ascertain Rich's safety, but Rich did not respond and McCubbins believed this to be uncharacteristic of Rich. McCubbins Dep. 163-64. McCubbins elected to return to the station and, as he approached the intake area, McCubbins saw what he believed to be Mills trying to escape. *Id.* Upon entering the intake room, McCubbins assessed that Rich and Mills were still involved in a scuffle and that Mills was handcuffed with his hands in front. McCubbins Dep. 165. McCubbins then elected to use a "hard hand technique and apply a closed fist strike to the upper area of [] Mills' head." *Id.* McCubbins' intention was to stun Mills in order to gain his compliance. *Id.*

After McCubbins' strike, McCubbins pulled Mills off the bench and grabbed the chain between Mills' handcuffs. Rich and McCubbins then continued to pull Mills to the ground where he landed on his right side and his head hit the floor. Mills contends that McCubbins punched him again while he was on the floor. Mills Dep. 318. The officers noticed blood coming from Mills' face and McCubbins called EMS. McCubbins Dep. 166.

Mills filed this action on July 1, 2013, alleging claims against Officers Rich and McCubbins for unconstitutional excessive force in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and trespass by public officer by assault and battery under state law. Mills has also raised claims for negligence against the Town as well as gross negligence and a claim for violation of jailkeeper's duty to protect in violation of N.C. Gen. Stat. § 165-55 against all defendants. Defendants have raised the defenses of qualified immunity and public officer immunity under state law.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. LibertyLobby, Inc.*, 477 U.S. 242, 252 (1986). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

I. PER SE EXCESSIVE FORCE

Mills contends that defendants' repeated blows to his head and neck area while he was handcuffed constituted unreasonable deadly force as a matter of law. Mills further contends that because of this he is entitled to summary judgment in his favor on his § 1983 claim and his state law assault and battery claim. Although Mills argues that *any* closed-fist punch to the face or head should be construed as deadly force, the Court does not find this argument persuasive. In the cases relied upon by plaintiff, the facts and circumstances leading up to and during the use of force were strikingly dissimilar to the circumstances here.

In *Thomas v. Holly*, 533 Fed. App'x 208, 220 (4th Cir. 2013)(unpublished), the court of appeals held that, where it is apparent that a detainee poses no immediate threat to the safety of officers, striking the detainee in the face numerous times with the knee and punching the

4

detainee four or five times in the back of the head with great force is objectively unreasonable. Here, it was not apparent to McCubbins that Mills posed no immediate threat of danger and only a single closed-fist punch was delivered. In *Sawyer v. Asbury*, 537 Fed. App'x 283, 297 (4th Cir. 2013)(unpublished), in the moments prior to the delivery of a punch to the face the officer had seized the plaintiff by the neck and two other officers, who did not from the video appear to believe that plaintiff posed any threat, were holding the plaintiff's arms when the officer punched plaintiff in the face. Indeed, the *Sawyer* court specifically noted that the conduct of the other officers on the scene was a "powerful indicator" that violent force was not necessary in that instance. *Id.* Here, by contrast, the video recording demonstrates that Rich and Mills were in some sort of physical scuffle when McCubbins entered the room, and, as discussed further below, a reasonable officer who knew that Mills was intoxicated, that Rich had failed to respond to his radio, and who perceived Mills to be physically larger than Rich, could have determined that force was necessary.

Mills is correct that none of his actions in the booking room could be construed as requiring deadly force to overcome; indeed, the "mere use of foul language, even a drunk's loud use of such language in a police station, does not justify an objectively reasonable police officer knocking the drunk down, jumping on him, and breaking his nose." *Jones v. Buchanan*, 325 F.3d 520, 530 (4th Cir. 2003). However, while a closed-fist punch to the head may under some circumstances constitute deadly force, the Court cannot find that the use of force in the instant matter would support a finding that it was per se excessive. Mills' motion for partial summary judgment is denied.

II. QUALIFIED IMMUNITY, SECTION 1983 CLAIM

The privilege of qualified immunity protects government officials from liability so long as they could reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court recognized a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Judges are permitted to exercise their discretion, however, in regard to which of the two prongs should be addressed first in light of the facts and circumstances of the particular case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The plaintiff bears the burden to show that the constitutional violation occurred, while defendants bear the burden on the second inquiry, whether the right was clearly established. *Henry*, 501 F.3d at 377-378. A right is clearly established if it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

A. *Constitutional Violation*

The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment," *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989), and is not "an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441, U.S. 520, 538 (1979). A plaintiff must demonstrate "only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). In determining whether the force was objectively unreasonable, a court

6

considers the evidence from the perspective of a reasonable officer on the scene and may not employ 20/20 hindsight. *Graham*, 490 U.S. at 396-97.

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473. Because the standard is an objective one, the Court is not concerned with the officers' motivation or intent. *See e.g. Clay v. Emmi*, __ F.3d __, 2015 WL 4758917, at *4 (6th Cir. Aug. 13, 2015). Moreover, it is appropriate to determine whether the force used was objectively reasonable in full context, as a segmented view of the events "misses the forest for the trees." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (citation omitted).

The force in question in this matter concerns McCubbins' delivery of a closed-fist punch to Mills' head and Rich and McCubbins' executing a takedown maneuver in order to gain control over Mills.[1] The Court finds that, even when viewing the facts in the light most favorable to Mills, the actions of Rich and McCubbins were objectively reasonable and they are entitled to qualified immunity.

The information confronting McCubbins when he entered the intake room just prior to the use of force was as follows: Mills was intoxicated and McCubbins believed Mills to be larger in size than Rich; Rich was alone with Mills and had uncharacteristically not responded to McCubbins' call on the radio just prior to McCubbins' arrival; it appeared that Mills was trying to escape; and Rich and Mills were engaged in a physical altercation or scuffle. Escape of a detainee would be a serious security issue, *see e.g. McKenney v. Harrison*, 635 F.3d 354, 360

---

[1] There is some reference in the record to a second punch delivered by McCubbins during the takedown. It is not clear from the video recording whether this punch occurred. Because the parties have primarily limited their motions to McCubbins' punch to Mills' face and the subsequent takedown, the Court cabins its consideration of the force used to those two incidents.

(8th Cir. 2011) (officers entitled to use force to prevent arrestee's escape), and a physical altercation between a police officer and detainee is indicative of a further security and safety issue and would also involve resistance by the detainee.

Moreover, Mills' expert, David Cloutier, stated that McCubbins' perception of the events, including his belief that Mills was attempting to escape, was reasonable. Cloutier Dep.at 70-76. Mr. Cloutier further stated that, based on the officers' perception of the situation, a takedown was necessary. *Id.* at 129. Although Mr. Cloutier would dispute the precise manner in which Mills was taken down, *id.*, the Court must be careful not to engage in armchair reflection when considering the actions of the officers. *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996). Several of the relevant factors – the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting – therefore weigh in favor of finding that the force used was objectively reasonable.

As to the relationship between the need for the use of force and the amount of force used, McCubbins delivered a single punch to Mills' face with the intention of stunning him. McCubbins has presented evidence that use of a closed fist punch "to gain control of a situation by stunning, distracting, or incapacitating the subject before using other techniques, such as a takedown" was part of his training. [DE 41-17 at 17 of 21]. McCubbins allegedly used his non-dominant hand when executing the punch, and Mr. Cloutier has agreed that it can be reasonable for an officer to punch a handcuffed detainee in the face, such as when a detainee is attempting to spit on an officer. Cloutier Dep. 162. "While punching someone may not be the best way to prevent his escape, it cannot [under these circumstances] be said that the blow was" objectively disproportionate to the need for force. *Schliewe v. Toro*, 138 Fed. App'x 715, 722 (6th Cir. 2005)(unpublished).

Case 7:13-cv-00138-BO   Document 62   Filed 09/01/15   Page 8 of 12

Rich and McCubbins then executed a takedown maneuver to get Mills on the floor and ensure his compliance. The experts disagree as to whether the takedown was a separate incident of force, *see e.g.* Combs Dep. 61, but, even under Mills' theory that it was a separate incident, it does not appear that the force used was so disproportionate to the need for force as to weigh in favor of a finding of unreasonableness. As noted above, though Mr. Cloutier would have performed the takedown differently, he does not dispute McCubbins' and Rich's perception that a takedown was necessary. Further, though the extent of injury is not dispositive to the inquiry of whether or not the force used was excessive, Mills has testified that he believes it was the punch that injured him and not the takedown because he contacted the ground on his right side and the left side of his face sustained the most injury. Mills Dep. 379-80; *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (lack of injury "may suggest whether the use of force could plausibly have been thought necessary in a particular situation.") (internal quotation and citation omitted). This factor thus weighs in favor of finding that the force used was not objectively unreasonable.

Mills indeed suffered serious injuries, a fracture of the medial left orbital wall and nasal bone fractures, [DE 38-12], and this factor weighs in favor of a finding of unreasonableness. The short duration of the entire incident, roughly six seconds, demonstrates, however, that an effort was made to limit the amount of force applied.

On balance, the factors to be considered weigh in favor of a finding that the force used by McCubbins and Rich was not objectively unreasonable. McCubbins was required to make a snap decision when he entered the room to find Rich and Mills engaged in what he reasonably believed to be a physical altercation. Such scenario demonstrated that Rich did not have control over the situation or Mills when McCubbins arrived. The closed-fist punch to Mills' head and rough takedown may indeed have been more than what was necessary when considering the

9

circumstances in hindsight, but only one punch was delivered and one takedown maneuver was executed before the force ceased. Under these circumstances, and having considered the officers' actions in context and from the perspective of a reasonable officer on the scene, the Court holds that Rich and McCubbins made at worst mistaken but reasonable judgments and that no constitutional violation occurred. Because the Court finds that the force used was not objectively unreasonable, it need not consider the second step of the qualified immunity analysis. *Morse v. Frederick*, 551 U.S. 393, 400 (2007); *see also Gregg v. Ham*, 678 F.3d 333, 341 n.7 (4th Cir. 2012) ("To prevail under qualified immunity, [defendant] has to show either that there was no constitutional violation or that the right violated was not clearly established.").

## III. STATE LAW CLAIMS

Defendants are further entitled to summary judgment on Mills' remaining state law claims.

### *Assault & Battery*

North Carolina law recognizes that an assault and battery by a law enforcement officer may provide the basis for a civil action for damages so long as the plaintiff can show that the force used was excessive under the circumstances. *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 625 (2000) (citation omitted). In excessive force cases such as this, a "parallel state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well" if the federal claim survives summary judgment. *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994). Because the Court has found that McCubbins' and Rich's actions were not objectively unreasonable, Mills' assault and battery claims against Rich and McCubbins "go the way of his § 1983 excessive force claims." *Thomas v. Holly*, 533 Fed. App'x 208, at 223.

### *Negligence & Gross Negligence*

Case 7:13-cv-00138-BO   Document 62   Filed 09/01/15   Page 10 of 12

Mills' negligence claim against the Town of Wrightsville beach alleges that the town failed to exercise reasonable care in the supervision and training of its police officers in the use of force. Mills further alleges a claim for gross negligence against all defendants, asserting that the conduct of Officers Rich and McCubbins was willful, wanton, deliberate, and/or grossly negligent and in conscious and/or reckless disregard for the life and safety of Mills.

Public officer immunity protects public officials performing discretionary acts unless their acts are found to be malicious, corrupt, or outside the scope of their duties. *Evans v. Chalmers*, 703 F.3d 636, 657 (4th Cir. 2012). McCubbins and Rich are protected by public officer immunity as the Court has found that their actions were not objectively unreasonable, and thus could not be considered to be malicious or corrupt. *See Cooper v. Sheehan*, 735 F.3d 153, 160 (4th Cir. 2013) (merits of gross negligence claim tied to reasonableness of officer's actions). As Mills concedes, a claim for negligent supervision and training is "derivative and dependant on the resolution of the negligence claims against the defendant-officers. Without a underlying negligence charge against the deputies, a claim of negligence against the [Town] can not be supported." *Prior v. Pruett*, 143 N.C. App. 612, 622 (N.C. App. 2001). Therefore, because in this instance summary judgment is appropriate as to Mills' gross negligence claim, his negligence claim fails as well.

*Jailkeeper's Duty to Protect*

Finally, Mills' claim for liability for injury to prisoner by jailer under N.C. General Statute section 162-55 fails as a matter of law as recovery is only available where the jailer's actions constitute criminal violations. *Letchworth v. Gay*, 874 F. Supp. 107, 110 (E.D.N.C. 1995) ("only those acts amounting to crimes yield treble civil damages"). Additionally, Mills has not opposed entry of summary judgment in defendants' favor on this claim. [DE 47 at 2].

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment [DE 34] is DENIED and defendants' motion for summary judgment [DE 35] is GRANTED. The clerk is DIRECTED to enter judgment accordingly and to close the file.

SO ORDERED, this **31** day of **August**, 2015.

Terrence W. Boyle

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

Case 7:13-cv-00138-BO Document 62 Filed 09/01/15 Page 12 of 12